UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BEVERLY ALLEN, Individually and on Behalf of the Class,<br><br>Plaintiff,<br><br>v.<br><br>PROTECTIVE LIFE INSURANCE COMPANY, a Tennessee Corporation; EMPIRE GENERAL LIFE INSURANCE COMPANY, an Alabama Corporation,<br><br>Defendant. | No. 1:20-cv-00530-NONE-JLT<br><br>ORDER<br><br>(Doc. No. 12) |

**INTRODUCTION**

Plaintiff Beverly Allen ("plaintiff") filed this suit, individually and on behalf of a class, against Protective Life Insurance Company ("defendant"), which is the successor by merger to Empire General Life Assurance Corporation. Plaintiff alleges that defendant violated California Insurance Code §§ 10113.71 and 10113.72, both of which require proper notice of and grace periods for pending lapses or terminations of life insurance. Defendant moved to dismiss the complaint for both failure to state a claim upon which relief can be granted and for lack of federal subject-matter jurisdiction.

/////

/////

1

For the reasons discussed below, defendant's motion is converted to a motion for summary judgment and will be denied.[1]

**BACKGROUND**

In or around 1998, plaintiff's husband purchased a life insurance policy for himself ("the policy") from the defendant company. (Doc. No. 1 at ¶ 27.) The purpose of this policy, valued at $400,000, was to "insure the life of Danny K. Allen and provide protection to beneficiary and [p]laintiff Beverly Allen." (Doc. No. 1 at ¶ 28–29.) After the Allens made payments on the policy for 20 years, Mr. Allen fell ill. (Doc. No. 1 at ¶ 31.) Plaintiff and her husband missed one payment on the policy in or around September 2018. (Doc. No. 1 at ¶ 31.) Defendant lapsed the policy in November 2018 and refused to reinstate the policy when plaintiff attempted to make another payment. (Doc. No. 1 at ¶ 31.) Mr. Allen passed away in January 2019. (Doc. No. 1 at ¶ 31.)

Plaintiff alleges that defendant was not in compliance with California Insurance Code §§ 10113.71 and 10113.72, both of which contain procedural requirements for the termination and lapse of life insurance policies. (Doc. No. 1 at ¶¶ 1, 2, 7, and 14.) Plaintiff filed the instant action on April 13, 2020 as the named plaintiff representing a class of others that also allege they have been harmed by defendant's failure to comply with §§ 10113.71 and 10113.72. (Doc. No. 1 at ¶ 7.)

Defendant moves to dismiss plaintiff's complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) on the grounds that she does not have standing to bring this suit and is otherwise judicially estopped from pursuing her claims. (See Doc. No. 12-1 at 7.) Both arguments are rooted in the effect of plaintiff's ongoing bankruptcy proceedings.

/////

---

[1] The undersigned apologizes for the excessive delay in the issuance of this order. This court's overwhelming caseload has been well publicized and the long-standing lack of judicial resources in this district long-ago reached crisis proportion. That situation, which has continued unabated for over twenty months now, has left the undersigned presiding over 1300 civil cases and criminal matters involving 735 defendants at last count. Unfortunately, that situation sometimes results in the court not being able to issue orders in submitted civil matters within an acceptable period of time. This situation is frustrating to the court, which fully realizes how incredibly frustrating it is to the parties and their counsel.

1          Three years before Mr. Allen's life insurance policy lapsed, plaintiff and her husband filed
2   a voluntary joint Chapter 13 bankruptcy petition in the United States Bankruptcy Court for the
3   Eastern District of California.  (*See In re Allen*, 1:15-BK-14163 ("Bankr."), Doc. No. 1; *see also*
4   Doc. No. 12-4.)  After Mr. Allen's death, plaintiff converted the bankruptcy case from Chapter 13
5   to Chapter 7, and a Chapter 7 trustee was appointed.  Plaintiff and the trustee then sold Mr.
6   Allen's business asset to pay off all remaining creditors' claims and fees.  (Doc. No. 23-1 at ¶ 7).
7   The bankruptcy court discharged plaintiff's debts on August 27, 2019, and the bankruptcy case
8   was closed on May 29, 2021.  (Bankr. Doc. Nos. 101, 169.)

9          When plaintiff and her husband first filed for bankruptcy, they submitted an initial
10  bankruptcy schedule in which they denied paying any life insurance premiums or owning any
11  interests in life insurance policies, among other things.  (Doc. No. 12-4 at 14.)  After converting
12  the bankruptcy from Chapter 13 to Chapter 7, plaintiff filed an amended bankruptcy schedule in
13  which she again denied owning interests in life insurance policies or any claims against third
14  parties.  (Doc. No. 12-11 at 14.)  At the time of this amendment, defendant had terminated Mr.
15  Allen's life insurance policy, and plaintiff believed—in part as a result of defendant's alleged
16  failure to provide proper notice about the lapse of the policy—that she did not have any
17  remaining interest in the policy.  (Doc. No. 23-2 at ¶¶ 7–9.)  The bankruptcy court subsequently
18  discharged plaintiff's debts on August 27, 2019.  (Doc. No. 12-12.)

19         Then, in March 2020, plaintiff met with attorneys for the first time; it was during this
20  meeting that plaintiff contends she first learned about her claims against defendant.  (Doc. No.
21  23-1 at ¶ 9.)  Plaintiff filed this action soon thereafter and asserts that she informed her
22  bankruptcy attorney and trustee about the action, (Doc. No. 23-1 at ¶ 10), but she did not amend
23  her bankruptcy schedules to reflect the policy or this suit until defendant filed the instant motion
24  to dismiss.  (Doc. 23-3.)

25         After plaintiff amended her schedules, the trustee abandoned any claims connected to this
26  lawsuit because the sale of Mr. Allen's business assets provided "funds sufficient to pay all
27  administrative expenses and all filed and allowed claims."  (Doc. No. 23-2.)  No creditor objected
28  to this abandonment within the allocated 15-day period to do so.

Defendant argues that plaintiff's claims against defendant should be dismissed pursuant to Rule 12(b)(1) because they are part of the bankruptcy estate such that only the bankruptcy trustee has standing to bring this claim. Defendant also argues, pursuant to Rule 12(b)(6), that judicial estoppel should preclude this suit because plaintiff improperly failed to list both Mr. Allen's life insurance policy and plaintiff's claims against defendant in her bankruptcy schedules.[2]

## LEGAL STANDARD

### A. Conversion to a Motion for Summary Judgment

Both parties request that the court consider documents from plaintiff's bankruptcy proceeding in resolving this motion. Plaintiff additionally requests that the court consider her declaration, (Doc. No. 23-1), the trustee's notice of intent to abandon this claim and other property, and two documents related to the legislative history of the California Insurance Code §§ 10113.71 and 10113.72.

As a general rule, in considering a motion to dismiss, courts are limited to the allegations in the complaint and judicially-noticeable documents. The court can, for example, take judicial notice of the docket in plaintiff's bankruptcy proceedings and the filing of specific documents in that case because the documents are public records. *See* 11 U.S.C. § 107(a) ("[A] paper filed in a case under this title and the dockets of a bankruptcy court are public records[.]"); *see also Reusser v. Wachovia Bank, N.A.*, 525 F.3d 855, 857 n.1 (9th Cir. 2008) ("We take judicial notice of the bankruptcy court order, because it is a matter of public record." (citations omitted)); *United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (holding that the court may take notice of proceedings in other courts, both within and outside of

---

[2] Further proceedings in this case are currently stayed pending the resolution of *McHugh v. Protective Life Insurance Company* in the California Supreme Court and *Thomas v. State Farm Insurance Company* and *Bentley v. United of Omaha Life Insurance Co.* in the Ninth Circuit. (Doc. No. 39.) These cases will determine whether §§ 10113.71 and 10113.72 apply to insurance policies issued prior to January 1, 2013, which includes plaintiff's insurance policy and the proposed class's policies, and whether those provisions apply if a policyholder makes a premium payment on or after the statutes' effective date. The outcome of any one of these appeals will substantively guide, if not control, the court's application of §§ 10113.71 and 10113.72 in this case. This order does not affect the stay, which remains in place until a ruling is published in any one of the three aforementioned cases pending before the Ninth Circuit. (Doc. No. 39 at 10.)

4

the federal judicial system, if those proceedings have a direct relation to matters at issue.).

Defendant's 12(b)(1) motion to dismiss for lack of standing can be resolved with only the complaint and documents filed in plaintiff's bankruptcy action; the court therefore takes judicial notice of documents filed in the bankruptcy action. In considering defendant's alternative argument that plaintiff is judicially estopped from bringing these claims, however, the court finds it necessary to consider plaintiff's declaration filed in reply to defendant's motion to dismiss. (Doc. No. 23-1.) The court therefore converts defendant's 12(b)(6) motion to a motion for summary judgment under Federal Rule of Civil Procedure 56. *See United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003) ("When ruling on a Rule 12(b)(6) motion to dismiss, if a district court considers evidence outside the pleadings, it must normally convert the 12(b)(6) motion into a Rule 56 motion for summary judgment[.]")

**B.      Rule 12(b)(1) Motion to Dismiss**

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a party may can move to dismiss an action for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "When a defendant brings a Rule 12(b)(1) motion, the plaintiff has the burden of establishing subject matter jurisdiction." *Johnson v. Jacobs*, No. 2:14-cv-02323-JAM-EFB, 2015 WL 1607986, at *1 (E.D. Cal. Apr. 9, 2015) (citing *Rattlesnake Coal. v. U.S. EPA*, 509 F.3d 1095, 1102 n.1 (9th Cir. 2007)).

"A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id.* The pending 12(b)(1) motion is a factual attack because defendant is disputing the truth of plaintiff's allegations. *See Safe Air*, 373 F.3d at 1039. Defendant argues that plaintiff does not have standing to bring this lawsuit.

"In resolving a factual attack on jurisdiction [under Rule 12(b)(1)], the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Id.* at 1039 (citing *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003)); *see also S.B. by & through Kristina B. v. California Dep't of Educ.*, 327 F. Supp.

5

1  3d 1218, 1233 (E.D. Cal. 2018).

### C. Rule 56 Motion for Summary Judgment

Summary judgment is appropriate when the moving party has shown "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 89 L.Ed.2d 538 (1986) (citation omitted). In summary judgment practice, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B). "This burden is not a light one." *In re Oracle*, 627 F.3d at 387. Nonetheless, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

Once the moving party has met its burden, the burden shifts to the non-moving party to "designate specific facts showing a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324 (quotation marks omitted). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec.*, 475 U.S. at 586. "The mere existence of a scintilla of evidence ... will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

In deciding a summary judgment motion, the court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Id.* at 255.

1  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate
2  inferences from the facts are jury functions, not those of a judge ... ruling on a motion for
3  summary judgment." *Id*. However, conclusory or speculative testimony in affidavits is
4  insufficient to raise genuine issues of fact and defeat summary judgment. *See Thornhill Publ'g*
5  *Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

## ANALYSIS

### A. Plaintiff Has Standing to Bring This Action

In defendant's June 22, 2020 motion to dismiss, defendant argued that plaintiff lacked standing to bring the asserted claim because she had not yet scheduled the claim in her bankruptcy proceeding; therefore, the claim belonged to the bankruptcy estate and the bankruptcy trustee had exclusive standing to pursue the claim. (Doc. No. 12-1 at 7–8.)

However, on July 17, 2020, plaintiff amended her bankruptcy schedules to include the subject policy and this lawsuit. (Doc. No. 23-3.) The trustee then abandoned this lawsuit (and several pieces of plaintiff's property) on the basis that the trustee already held sufficient funds to pay all administrative expenses and all filed and allowed claims in the bankruptcy action. (Doc. No. 24-4.) Plaintiff argues that she has standing now that the trustee has abandoned the claim. (Doc. No. 23 at 7–8.)

Plaintiff is correct. "An 'estate' is created when a bankruptcy petition is filed." *Cusano v. Klein*, 264 F.3d 936, 945 (9th Cir. 2001); 11 U.S.C. § 541(a). A Chapter 7 debtor may only bring a cause of action if the debtor can show that the action was either 1) not subject to the bankruptcy or 2) abandoned by the bankruptcy trustee. Otherwise, the claim belongs to the bankruptcy estate and only the trustee has standing to litigate the cause of action. *Rowland v. Novus Financial Corp.*, 949 F. Supp. 1447, 1453 (9th Cir. 1996). When plaintiff filed this litigation, she had not scheduled her claims against defendant as a part of her bankruptcy estate, nor had she acquired an abandonment; as such, her standing might have been in question.

However, the Ninth Circuit has held that a debtor can cure such a standing defect after the commencement of suit by demonstrating that the bankruptcy trustee has abandoned the claims at issue. *Dunmore v. United States*, 358 F.3d 1107, 1112 (9th Cir. 2004); *see also Aniel v. EMC*

7

1  *Mortg. Corp.*, No. C 10–5170 SBA, 2011 WL 835879, *4 (N.D. Cal. Mar. 4, 2011) ("Plaintiffs
2  obtained standing on November 2, 2010, when the bankruptcy court granted their unopposed
3  motion to compel the trustee to 'abandon' the estate's claims in the Property, as well as the instant
4  lawsuit.... Therefore, the Court finds that the instant action is not subject to dismissal for lack of
5  prudential standing").  As noted, the trustee in plaintiff's bankruptcy litigation has abandoned
6  plaintiff's claims brought against defendant in this suit.  (Doc. No. 24-4.)  This abandonment
7  relates back to the filing of the bankruptcy.  *Dunmore*, 358 F.3d at 1112 (citing *United States v.*
8  *CMA, Inc.*, 890 F.2d 1070, 1074 (9th Cir. 1989)); Fed. R. Civ. P. 17, Advisory Committee Note
9  on 1966 Amendment; *see also Catalano v. C.I.R.*, 279 F.3d 682, 685 (9th Cir. 2002) ("Upon
10  abandonment, the debtor's interest in the property is restored *nunc pro tunc* as of the filing of the
11  bankruptcy petition").

12  Plaintiff therefore has standing to pursue this action against defendant.

13  **B.     Plaintiff's Claims Are Not Judicially Estopped**

14  Defendant next argues that plaintiff should be estopped from pursuing her claims due to
15  her failure to (1) disclose the existence of Mr. Allen's life insurance policy when the pair filed for
16  bankruptcy in 2015 and (2) amend the bankruptcy schedules to include her interest in this lawsuit
17  prior to defendant's motion to dismiss.  As explained below, defendant is not entitled to judgment
18  as a matter of law on the issue of judicial estoppel because there are material issues of fact as to
19  whether her claims of inadvertence or mistake relieve her from estoppel.

20  1.  *New Hampshire* Factors

21  The doctrine of judicial estoppel is invoked at a court's discretion.  *New Hampshire v.*
22  *Maine*, 532 U.S. 742, 751 (2000).  "[I]ts purpose is to protect the integrity of the judicial process
23  by prohibiting parties from deliberately changing positions according to the exigencies of the
24  moment."  Though there is no exact formula, the following elements inform whether to apply the
25  doctrine in a particular case: (1) whether a party's later position is inconsistent with its earlier
26  position, (2) whether the court accepted the prior inconsistent position, creating a perception that
27  the court was misled, and (3) whether the party seeking to assert the inconsistent position would
28  /////

1    derive an unfair advantage or unfair detriment on the opposing party if not estopped. *Id.* at 750–
2    51.
3         In the bankruptcy context, federal courts have developed a basic default rule: if a
4    plaintiff-debtor omits a pending (or soon-to-be-filed) lawsuit from the bankruptcy schedules and
5    obtains a discharge, judicial estoppel bars the action. *Ah Quin v. County of Kauai Dept. of*
6    *Transp.*, 733 F.3d 267, 271 (9th Cir. 2013) (collecting cases). The reason for the rule is that the
7    plaintiff-debtor previously represented, in the bankruptcy case, that no claim existed—so she is
8    estopped from representing that a claim *does* exist in the later lawsuit. This basic rule follows the
9    test set out by the Supreme Court in *New Hampshire*: (1) the positions are clearly inconsistent ("a
10   claim does not exist" vs. "a claim does exist"); (2) the plaintiff-debtor succeeded in getting the
11   first court (the bankruptcy court) to accept the first position; and (3) the plaintiff-debtor obtained
12   an unfair advantage (discharge or plan confirmation without allowing the creditors to learn of the
13   pending lawsuit).
14        Plaintiff here admits that she did not initially schedule either Mr. Allen's life insurance
15   policy or plaintiff's claims in this lawsuit against defendant in her bankruptcy schedules. (Doc.
16   No. 23 at 7–10.) Plaintiff claims that this omission was inadvertent or mistaken. (Doc. No. 23 at
17   12; *see also* Doc. No. 23-1 at ¶ 5.) Applying judicial estoppel may be inappropriate when a
18   party's prior position was based on inadvertence or mistake. *Ah Quin* 733 F.3d at 272 (citing
19   *New Hampshire*, 532 U.S. at 751).
20        In *Ah Quin*, the plaintiff failed to schedule her pending employment discrimination action
21   when she filed for bankruptcy. After the bankruptcy court discharged her debts, plaintiff's
22   attorneys realized the error and moved to reopen her bankruptcy case, properly schedule the
23   employment claims, and set aside the discharge. Plaintiff's trustee then abandoned the
24   discrimination action. When the defendant moved for summary judgment, plaintiff argued that
25   her initial omission of the suit from her bankruptcy schedules had been a mistake; therefore, she
26   should not be judicially estopped from proceeding with her employment discrimination litigation.
27        The Ninth Circuit held that where a plaintiff-debtor corrects her initial error and allows
28   the bankruptcy court to re-process the bankruptcy with full and correct information, "two of the

9

three primary New Hampshire" factors are no longer met. *Ah Quin*, 733 F.3d at 274; *see also Zone Sports Ctr. LLC v. Red Head Inc.*, No. C 11-00634 JSW, 2011 WL 3862007, at *3 (N.D. Cal. Sept. 1, 2011) (holding that where a bankruptcy trustee was given the opportunity to administer previously-unscheduled claims, any prior inconsistencies had been remedied such that judicial estoppel does not apply.) In *Ah Quin*, the plaintiff filed a revised bankruptcy schedule; the trustee thereafter abandoned his interest in the lawsuit; and the bankruptcy was subsequently closed. 733 F.3d at 270. This was sufficient for the Ninth Circuit to deem the bankruptcy "re-processed" with corrected information. *Id.* at 273. Therefore, "the bankruptcy court ultimately did not accept the initial [erroneous] position." *Id*. at 274. The instant case is analogous. Here, plaintiff amended her bankruptcy schedules and the trustee thereafter abandoned the claims associated with the present lawsuit. As in *Ah Quin*, plaintiff's bankruptcy has been sufficiently "reprocessed" for judicial estoppel purposes, meaning that "two of the three primary *New Hampshire*" factors are no longer met.

        2.   <u>Mistake/Inadvertence</u>

In these circumstances, "judicial estoppel requires an inquiry into whether the plaintiff's bankruptcy filing was, in fact, inadvertent or mistaken, as those terms are commonly understood . . . the relevant inquiry is . . . the plaintiff's subjective intent when filling out and signing the bankruptcy schedules." *Ah Quin*, 733 F.3d at 276–277. Where the omission was mistaken or inadvertent, the third *New Hampshire* factor is also not met, because mistaken or inadvertent omissions do not result in "unfair" advantages." *Ah Quin*, 733 F3d at 275 n.6; *see also Cagle v. C & S Wholesale Grocers Inc.*, 505 B.R. 534, 538 (E.D. Cal. 2014) (holding that the benefit of an automatic stay constituted "unfair advantage," but that a mistake or inadvertence exception may apply.)

To examine whether a party's position was based on inadvertence or mistake, "courts must determine whether the omission occurred by accident or was made without intent to conceal. The relevant inquiry is not limited to the plaintiff's knowledge of the pending claim and the universal motive to conceal a potential asset—though those are certainly factors. The relevant inquiry is the plaintiff's subjective intent when filling out and signing the bankruptcy schedules."

*Ah Quin*, 733 F.3d at 276–77 (9th Cir. 2013).

On the present record, there are disputed material issues of fact regarding whether plaintiff's failure to disclose the insurance policy and her subsequent claims against defendant were due to mistake/inadvertence or to deceit. On the one hand, plaintiff has submitted a sworn affidavit to this court insisting that she was "unaware" that her bankruptcy schedules asked questions regarding life insurance policies. (Doc. No. 23-1 at ¶ 5.) Plaintiff declares that she "never concealed" the existence of the policy to her bankruptcy attorney. *Id*. Plaintiff further asserts that she was unaware of the need to amend her schedules after the complaint was filed because the trustee was aware of the suit and did not indicate that amendment of the schedules was required. (Doc. No. 23-1 at ¶¶ 5–10.) On the other hand, the questions in the original and amended bankruptcy schedules were explicit and straightforward in their requests for information about life insurance. (*See*, *e.g.*, Doc. No. 12-4 at 14.)

Defendant argues that plaintiff did not disclose her claims in the bankruptcy proceeding until *after* defendant filed the instant motion, which defendant argues is proof of plaintiff's deceit. (Doc. No. 32 at 3–6.) Defendant is correct that this timing is suspect and may weigh against a finding of mistake/inadvertence. For example, the Ninth Circuit has applied judicial estoppel where a plaintiff only filed amended schedules to defend against a motion to dismiss. *See Dzakula v. McHugh*, 746 F.3d 399 (9th Cir. 2014). However, in *Dzakula*, the plaintiff did not submit any evidence suggesting that the omission had been inadvertent or mistaken; therefore, "no reasonable fact-finder could conclude that the omission was inadvertent or mistaken." *Dzakula*, 746 F.3d at 401–402.

That is not the case here. As in *Ah Quin*, plaintiff here has submitted a sworn declaration stating that the omission of the policy and related claims against defendant from plaintiff's bankruptcy schedules was inadvertent or mistaken. Determining "mistake or inadvertence" in this case requires a credibility determination, which is the purview of the jury, *see Thornhill*, 594 F.2d at 738, and a reasonable factfinder may conclude from the evidence that the omission was inadvertent. *See Ah Quin*, 733 F.3d at 278; *see also Just Film, Inc. v. Merch. Servs., Inc.*, 873 F.Supp.2d 1171, 1179 (N.D. Cal. 2012) (finding no evidence of bad faith where plaintiff had told

11

her bankruptcy attorney of her potential claim and the attorney failed to include it on her bankruptcy petition); *Rose v. Beverly Health & Rehab. Servs.*, 356 B.R. 18, 27 (E.D. Cal. 2006) ("If evidence existed that Plaintiff had, in fact, attempted in good faith to inform both the creditors and the bankruptcy court that Plaintiff had pending claims, then a case could be made there was a good faith attempt to adequately disclose the existence of the claims against Defendants.")

## CONCLUSION

For all the reasons explained above, defendant's motion to dismiss (Doc. No. 12), which has been converted by the court into a motion for summary judgment, is denied.

IT IS SO ORDERED.

Dated: __September 30, 2021__  _____
UNITED STATES DISTRICT JUDGE