UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BEVERLY ALLEN, Individually and on Behalf of the Class,<br><br>  Plaintiff,<br><br>  v.<br><br>PROTECTIVE LIFE INSURANCE COMPANY, a Tennessee Corporation; EMPIRE GENERAL LIFE INSURANCE COMPANY, an Alabama Corporation,<br><br>  Defendant. | Case No. 1:20-cv-530-JLT-CDB<br><br><u>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS</u><br><br>(Doc. 68-1) |

Beverly Allen filed this suit, individually and on behalf of a class, against Protective Life Insurance Company ("Protective"), which is the successor by merger to Empire General Life Assurance Corporation. Plaintiff alleges that defendant violated California Insurance Code §§ 10113.71 and 10113.72, both of which require proper notice of and grace periods for pending lapses or terminations of life insurance. Protective has filed a Motion for Judgment on the Pleadings as to four of Plaintiff's six causes of action. (Doc. 68-1.) After consideration of the briefing and supplemental authorities filed by both parties, the Court **GRANTS IN PART AND DENIES IN PART** Protective's Motion.

**BACKGROUND**

In or around 1998, Allen's husband purchased a life insurance policy for himself ("the

Policy") from the Defendant company. (Doc. 1 at ¶ 27.) The purpose of this policy, valued at $400,000, was to "insure the life of Danny K. Allen and provide protection to beneficiary and [p]laintiff Beverly Allen." (Doc. 1 at ¶ 28–29.) After the Allens made payments on the policy for 20 years, Mr. Allen fell ill. (Doc. 1 at ¶ 31.) Plaintiff and her husband missed one payment on the policy in or around September 2018. (Doc. 1 at ¶ 31.) As a result, the policy lapsed in November 2018, and Defendant refused to reinstate the policy when plaintiff attempted to make another payment. (Doc. 1 at ¶ 31.) Mr. Allen passed away in January 2019. (Doc. 1 at ¶ 31.)

The Court has original jurisdiction pursuant to 28 U.S.C. § 1332, including under the Class Action Fairness Act. Plaintiff alleges that Defendant failed to comply with California Insurance Code §§ 10113.71 and 10113.72 ("the Statutes"), both of which took effect on January 1, 2013 and which contain procedural requirements for the termination and lapse of life insurance policies. (Doc. 1 at ¶¶ 1, 2, 7, and 14.) Specifically, the statues require: (1) that all life insurance policies "contain a provision for a grace period of not less than 60 days from the premium due date," § 10113.71(a); (2) that "[a] notice of pending lapse and termination of a life insurance policy shall not be effective unless mailed . . . at least 30 days prior to the effective date of termination if termination is for nonpayment of premium," id. § 10113.71(b)(1); and (3) that all insureds "be[] given the right to designate at least one person, in addition to the applicant, to receive notice of lapse or termination of a policy for nonpayment of premium," including "annual[] [notice] of the right to change the written designation or designate one or more persons," § 10113.72(a)–(b).

Allen alleges that Protective failed to comply with these requirements in the course of terminating the Policy and, therefore, the Policy should still be in effect. (Doc. 1 at ¶¶ 25, 31, 34–35.) As such, Allen filed the instant action on April 13, 2020 as the named plaintiff representing a class of others that also allege they have been harmed by Protective's failure to comply with §§ 10113.71 and 10113.72. (Doc. 1 at ¶ 7.) The Court subsequently denied Protective's motion to dismiss the complaint on standing and judicial estoppel grounds. (Doc. 46.) Allen's complaint seeks declarations under state and federal law (Counts I and II, Doc. 1 at ¶¶ 52–60, 61–65) and asserts: claims for breach of contract based on Protective's alleged violations of the Statutes

(Count III, Doc. 1 at ¶¶ 59, 64); a claim under the California's Unfair Competition Law ("UCL"), California Business and Professions Code §§ 17200, *et seq.*, alleging that Protectives statutory violations constitute unlawful and deceptive practices (Count IV, Doc. 1 at ¶¶ 75–87); a claim for financial elder abuse under California law (Count V, Doc. 1 at ¶¶ 88–96); and a tort claim for bad-faith violation of the implied covenant of good faith and fair dealing (Count VI, Doc. 1 at ¶¶ 97-108).

Defendants' prior Motion to Stay the case was granted on October 2, 2020, (Doc. 39), pending a decision from the California Supreme Court in a case expected to determine whether the 2013 amendments to the California Insurance Code would apply retroactively to policies issued beforehand. On August 31, 2021, in *McHugh v. Protective Life Insurance Co.*, 12 Cal. 5th 213 (2021), the court held that the statutes applied to all policies in force on or after the January 1, 2013, effective date of the statutes, and not just to policies issued after that time. *Id*. at 246. The court stated unequivocally that absent compliance with the statute, "no policy shall lapse or be terminated for an unpaid premium." *Id*. at 226. Subsequently, the Ninth Circuit, relying on *McHugh*, found that if an insurer failed to comply with those statutory requirements, a policy could not lapse for nonpayment of premium after January 1, 2013, even if the particular policy had been issued previously. *Thomas v. State Farm Life Ins. Co.*, No. 20-55231, 2021 WL 4596286 at *3 (9th Cir. Oct. 6, 2021). After *McHugh* and *Thomas* were decided, the stay in this case was lifted. (Doc. 65.)

Protective now requests judgment on the pleadings as to Counts I, II, IV, and VI. (Doc. 68.) Protective argues that Allen's requests for declaratory relief duplicate her breach of contract claim; that Allen has not established a right to equitable relief under the UCL; and that Allen did not submit an insurance claim as required to establish a bad-faith tort claim. Allen opposes the motion in its entirety and has filed supplemental authority in support of her opposition. (Docs. 70, 71.) Protective filed a reply and supplemental authority in support of the motion. (Docs. 72, 73.)

**LEGAL STANDARD**

Like a Rule 12(b)(6) motion, a motion for judgment on the pleadings under Federal Rule

of Civil Procedure 12(c) challenges the legal sufficiency of the opposing party's pleadings. For purposes of a Rule 12(c) motion, the non-moving party's allegations must be accepted as true, while the moving party's allegations that have been denied are assumed to be false. *Hal Roach*, 896 F.2d 1542, 1550 (9th Cir. 1989).[1] In addition, the non-movant's allegations must be construed in her favor. *Gen. Conf. Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church*, 887 F.2d 228, 230 (9th Cir. 1989). Judgment on the pleadings is proper only when "there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009) (citation omitted).

When granting a motion for judgment on the pleadings, a court should grant leave to amend if the complaint can be cured by additional factual allegations. *Somers v. Apple, Inc.*, 729 F.3d 953, 960 (9th Cir. 2013). However, "dismissal without leave to amend is proper if it is clear that the complaint could not be saved by amendment." *Id.* (citation omitted).

## ANALYSIS

Protective argues that Allen's request for declaratory judgment(s) is moot in light of the California Supreme Court's decision in *McHugh v. Protective Life Insurance Co.*, 494 P.3d 24 (Cal. 2021) and is otherwise duplicative of Allen's breach of contract claim. (Doc. 68 at 9.) Protective further argues that Allen's UCL claim fails because she has not alleged facts establishing that she lacks an adequate remedy at law, because she does not have standing to pursue the requested injunction, and because restitution is not an available remedy in this case. As to Allen's bad-faith tort claims, Protective argues that the complaint fails to state a claim either because it does not allege that Protective terminated the plaitniff's policy to avoid an impending claim or because there was a genuine dispute prior to *McHugh* as to the application of the Statutes to pre-2013 life insurance policies. (Doc. 68-1 at 9–10.)

**I.      Requests for Declaratory Relief, Counts I & II**

---

[1] A court typically cannot go beyond the pleadings to resolve an issue in a motion for judgment on the pleadings without converting the motion into one for summary judgment. *Hal Roach*, 896 F.2d at 1550. However, there are several exceptions to this rule: a court may still properly consider exhibits attached to the non-movant's pleading, documents referred to in the non-movant's pleading, and judicially noticeable facts. *Yang v. Dar Al-Handash Consultants*, 250 F. App'x 771, 772 (9th Cir. 2007).

Allen requests declaratory relief from the Court under Cal. Code Civ. P. § 1060 *et seq*. and the Declaratory Judgment Act (28 U.S.C. §§ 2201 *et seq*.) (Counts I & II). (Doc. 1 at 16, 18.) Protective seeks dismissal of the declaratory relief claims (1) for lack of actual controversy between the parties after the California Supreme Court's decision in *McHugh* and (2) because the declaratory relief claims are duplicative of Allen's breach of contract claim. (Doc. 68-1 at 19–22.)

The Declaratory Judgment Act permits district courts to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is sought or could be sought." 28 U.S.C. § 2201. Under federal and California law, an actual controversy must exist for courts to issue declaratory relief. *Id.*; Cal. Code Civ. P. § 1060. "The decision to grant declaratory relief is a matter of discretion, even when the court is presented with a justiciable controversy." *United States v. State of Wash.*, 759 F.2d 1353, 1356 (9th Cir. 1985) (citations omitted). Actions for declaratory relief must be "carefully limited in scope to meet the 'case and controversy' requirements of Article III of the Constitution." *Pac. Merch. Shipping Ass'n v. Aubry*, 918 F.2d 1409, 1414 (9th Cir. 1990) (citations omitted).

Protective first argues that after *McHugh*, there is no actual controversy between the parties to support declaratory relief. Protective is correct that Allen's complaint, in part, requests declaratory relief to resolve a question that was addressed by *McHugh* after the filing of this lawsuit. *McHugh* clarified that the statues apply to life insurance policies that were in force as of January 1, 2013, such as the Allens' policy. *See McHugh*, 12 Cal. 5th at 246. However, by the plain terms of the complaint, Allen *also* requests a judicial determination as to "whether policies were legally in force at the times of deaths of insureds, and to determine whether beneficiaries were wrongfully denied payment of benefits under their policies." (Doc. 1 at ¶¶ 60, 65.) Protective wholly fails to provide argument regarding these requests for declaratory relief which were *not* addressed by *McHugh*.

Instead, in both its motion and reply, Protective selectively quotes Allen's request for declaratory relief as merely seeking "a declaration or judgment that Sections 10113.71 and 10113.72 applied as of January 1, 2013, to Defendant's California policies in force as of or at any

5

time after January 1, 2013, including the Subject Policy." (Docs. 68-1 at 18; 72 at 7 (citing Doc. 1 at ¶ 59).) Protective ignores the first sentence of ¶ 59 and the whole of the following paragraph, which request declaratory relief on the parties' rights and other points relevant to this lawsuit. The Court also notes that despite *McHugh*, Protective appears to contest the Statutes' application to the policies at issue. (*See* Answer, Doc. 50 at 21, asserting that "Plaintiff's interpretation of the Statues is unconstitutional".) The Court concludes from the above that there is adequate controversy between the parties for declaratory relief.

Protective next argues that the Court should decline to exercise jurisdiction over Allen's request for declaratory relief because it duplicates her breach of contract claim in that "her theory of breach is based entirely on the premise that the Statutes apply to the policy." (Doc. 68-1 at 18.) Again, Protective ignores that Allen's request for declaratory relief is broader; Allen asks the Court to clarify the *effect* of the statutes' application to her policy at the time of her husband's death. Furthermore, on a basic level, a breach of contract claim provides relief for violation of a contract term, not a statute; declaratory relief claims are a natural vehicle by which to bring before the Court the question of Protective's ongoing and future *statutory* duties to Allen and other members of the class. *See Steen v. Am. Nat'l Ins. Co.*, 609 F. Supp. 3d 1066, 1073 (C.D. Cal. 2022).

Protective's duplicity argument ignores that damages for breach of contract would not remedy the alleged future uncertainty that a declaratory judgment would address. The court in *Siino v. Foresters Life Ins. & Annuity Co.*, No. 20-cv-02904 JST, 2020 WL 8410449 (C.D. Cal. Sept. 1, 2020), rejected a similar attempt by a defendant to obtain dismissal of declaratory relief claims. *Id*. at *7. There, the court reasoned that a breach of contract claim allows a party—such as the named plaintiff in that case—to obtain damages as a remedy to redress past wrongs, but a "declaration of rights and duties is forward-looking, intended to determine [the defendant's] continuing duties to the [rest of the] class." *Id.*; *see also StreamCast Networks, Inc. v. IBIS LLC*, Case No. CV 05-04239 MMM, 2006 WL 5720345, at *3 (C.D. Cal. May 2, 2006) ("Declaratory relief is designed to resolve uncertainties or disputes that may result in future litigation."). Here, taking as true Allen's allegations that Protective continues to refuse compliance with the lapse

6

and notice requirements of the Statutes as to all policies in force before January 1, 2013, declaratory relief is necessary to resolve the question of the insureds' current rights before the controversy leads to any future harm, (*see* Doc. 1 at ¶¶ 59, 65). *Bumpus v. U.S. Fin. Life Ins. Co.*, No. 2:20-CV-00926-MCE-AC, 2022 WL 4366979 (E.D. Cal. Sept. 21, 2022) ("Obtaining relief as to the ongoing rights and duties of Plaintiff and the putative class would, as the Complaint states, establish whether individuals were properly designated to receive notices of pending lapse and termination, as well as whether policies were legally in force and whether beneficiaries were wrongfully deprived of benefits.")

Lastly, to the extent that Allen's declaratory relief claims may duplicate part of her breach of contract claims, "[t]he existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate." Fed. R. Civ. Proc. 57. Declaratory relief remains proper "where a breach of contract claim will not settle all of the contractual issues concerning which plaintiff seeks declaratory relief." *StreamCast*, 2006 WL 5720345, at *4 (C.D. Cal. May 2, 2006). And, if the facts establish that Protective did not breach the contract(s) at issue but *did* breach their statutory duties under §§ 10113.71 and 10113.72, declaratory relief to establish that statutory duty serves as an alternative theory of redress. *Bumpus*, 2022 WL 4366979, at *4. Protective's motion for judgment on the pleadings as to Counts I and II is accordingly **DENIED**.

**II.    Claim for Violation of the California Unfair Competition Law, Count IV**

The UCL prohibits "unfair competition," which includes "any unlawful, unfair or fraudulent business act or practice[.]" Cal. Bus. & Prof. Code § 17200. Each prong of the UCL is a separate and distinct theory of liability. *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 731 (9th Cir. 2007). In the insurance context, allegations essential to a claim for violations of the UCL are: (1) plaintiff's status as an insured or intended beneficiary of the insurance policy, (2) the existence of the policy, (3) the insurer's conduct and that such conduct was an unfair, unlawful or fraudulent business practice in violation of Bus. & Prof. Code § 17200, (4) plaintiff has no adequate remedy at law, (5) a request for injunctive relief and or restitution, as monetary damages

are not recoverable under the UCL, [2] and (6) a request for attorney's fees. *See Heighley v. J.C. Penney Life Ins. Co.,* 257 F. Supp. 2d 1241, 1259 (C.D. Cal. 2003); *Bentley v. United of Omaha Life Ins. Co.*, No. CV157870DMGAJWX, 2016 WL 7443189, at *6 (C.D. Cal. June 22, 2016) ("*Bentley I*"). Only the fourth and fifth elements are at issue in Protective's motion.

Count IV of Allen's Complaint alleges that Protective violated the California Business and Professions Code Sections 17200, *et. seq.* ("UCL") by

> "violating and continuing to violate Sections 10113.71 and 10113.72, including by failing to afford insureds, including Plaintiff, the requisite 60-day grace period and/or written 30-day notice prior to any lapse or termination, and further, an annual right to designate someone else to also receive notices of pending lapse or termination of coverage."

(Doc. 1 at ¶ 77.) Allen further alleges that Protective "continue[s] to conceal and mislead the policyholders and beneficiaries of the existence of" their rights under the Statutes. Allen therefore asserts that she and other class members are entitled to "restitution of the money or property acquired by [Protective]" by means of its unlawful business practices, as well as injunctive relief. (Doc. 1 at ¶¶ 79, 82–83.)

Protective asserts that Allen's UCL claim fails as a matter of law because Allen does not have standing to pursue an injunction, she has an adequate remedy at law, and because the restitution she seeks is not available under the UCL. (Doc. 68-1 at 14.) Allen disagrees on all fronts. (Doc. 70 at 16–23.) The Court addresses each argument in turn.

### A. Standing to Pursue Injunctive Relief

Allen requests injunctive relief "against Defendants' ongoing business practices," because Protective allegedly continues to "ignore or otherwise violate The Statutes". (Doc. 1 at ¶ 83; *see*

---

[2] "California courts have held that 'the UCL provides only for equitable remedies.'" *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 839 n.2 (9th Cir. 2020) (quoting *Hodge v. Superior Ct.*, 51 Cal. Rptr. 3d 519, 523 (Cal. Ct. App. 2006)); *see also Korea Supply Co. v. Lockheed Martin Corp.*, 63 P.3d 937, 948 (Cal. 2003) ("[T]he [UCL] provides an *equitable* means through which . . . private individuals can bring suit to prevent unfair business practices[.]" (emphasis added)). Specifically, "[t]he UCL limits the [private] remedies available for UCL violations to restitution and injunctive relief." *Madrid v. Perot Sys. Corp.*, 30 Cal. Rptr. 3d 210, 218 (Cal. Ct. App. 2005) (citing Cal. Bus. & Prof. Code §§ 17203, 17206). The availability of the equitable remedies provided under the UCL is subject to the "fundamental equitable principle[]" requiring "inadequacy of the legal remedy." *Prudential Home Mortg. Co. v. Superior Ct.*, 78 Cal. Rptr. 2d 566, 573–74 (Cal. Ct. App. 1998).

*also* Doc. 1 at ¶ 34, alleging that Protective has yet to provide Allen with the Statutes' required notices.) Protective argues that Allen does not have proper standing to seek this relief because "it is impossible for her policy to be lapsed a second time." (Doc. 68-1 at 18.)[3]

Though the UCL does permit the entry of an order enjoining a party from purported unfair business practices, *Sperling v. Stein Mart, Inc.*, No. EDCV 15-01411 BRO (KKx), 2016 WL 8925347, at *6 (C.D. Cal. Jan. 26, 2016) ("A court may enjoin an organization that violates the UCL."), the party seeking injunctive relief must show a threat of injury that is "actual and imminent, not conjectural or hypothetical." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018) (citing *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)). In other words, the "threatened injury must be *certainly impending* to constitute injury in fact" and "allegations of *possible* future injury are not sufficient." *Id*. (emphasis added) (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (internal quotation marks and alteration omitted)). Past wrongs, though insufficient by themselves to grant standing, are "evidence bearing on whether there is a real and immediate threat of repeated injury." *Davidson*, 889 F.3d at 967. In the context of class actions, "[s]tanding exists if at least one named plaintiff meets [these] requirements." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 978 (9th Cir. 2011); *see also In re Tobacco II Cases*, 46 Cal. 4th 298, 306 (2009).

Other courts have found standing for injunctive relief in statue-related cases where named plaintiffs pled ownership of policies for still-living insureds whose policies could be terminated improperly in the future. *See, e.g., Steen*, 609 F. Supp. 3d at 1075; *see also Bumpus*, 2022 WL 4366979. These cases are not applicable here. Though Allen very clearly pleads an impending future injury as to other class members who have active policies with Protective, Allen has not alleged that she herself—whose policy has long-since lapsed, improperly or otherwise—is at risk of future, imminent injury from Protective unrelated to the claims in this lawsuit. Where, as here, the named plaintiff's only policy with the defendant has lapsed and there is no allegation that she plans to do further business with Protective, there is "no ongoing need for injunctive relief."

---

[3] The Court will not address Protective's additional complaint that the requested injunction is "impermissibly vague," (Doc. 68-1 at 18,) because Protective did not offer argument on this point apart from a single passing mention.

*Siino v. Foresters Life Ins. & Annuity Co.*, No. 20-CV-02904-JST, 2020 WL 8410449 (N.D. Cal. Sept. 1, 2020) (citing *Bentley I*, 2016 WL 7443189, at *7 (C.D. Cal. June 22, 2016); *McAdam v. State Nat. Ins. Co.*, No. 12-cv-1333 BTM(MDD), 2012 WL 4364655, at *2 (S.D. Cal. Sept. 24, 2012).) Protective's motion is **GRANTED** as to Allen's request for an injunction under the UCL, though the Court provides Allen leave to amend this claim as necessary.

### B. Adequacy of UCL Claims

Protective next argues that Allen cannot pursue restitution, the only remaining relief available under the UCL, because she has failed to establish that she lacks an adequate remedy at law and because the UCL does not provide restitution for the recovery Allen seeks. The Ninth Circuit recently counseled that federal courts exercising diversity jurisdiction "must apply traditional equitable principles before awarding restitution under the UCL," which requires plaintiffs to "establish that [they] lack[] an adequate remedy at law before securing equitable restitution for past harm". *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 841 & 844 (9th Cir. 2020) (emphasis added). *Sonner* specified that "a complaint seeking equitable relief fail[s]" where "it d[oes] not plead the basic requisites of the issuance of equitable relief' including "the inadequacy of remedies at law." *Sonner*, 971 F.3d at 844 (internal quotations omitted).

Courts have differed somewhat as to what *Sonner* mandates at the pleading stage. Some courts have required plaintiffs to plead specific *facts* establishing a lack of adequate remedy at law. *See Watkins v. MGA Entertainment, Inc.*, 550 F.Supp.3d 815, 837 (N.D. Cal. 2021) (dismissing UCL claim where Plaintiffs have not alleged any *facts* establishing that their remedies at law are inadequate) (emphasis added). *Sonner* contains some support for this approach, as it affirmed the dismissal of a UCL claim where the restitution sought (a full refund of a purchase price) was the very same sum that plaintiff sought as compensatory damages for the exact same wrong, and, crucially, the plaintiff could not "explain how the same amount of money for the exact same harm [was] inadequate or incomplete" to compensate her for the alleged harms. *Id.* at 844. However, *Sonner* arose after a plaintiff voluntarily dismissed her damages claim on the eve of trial and proceeded only with her "claims for restitution and injunctive relief," to guarantee a bench trial. *Id.* at 837. Due to the late stage of the case, including completed discovery and trial

preparation, the *Sonner* court was privy to (and appeared to rely on) more information in the parties' briefings than is typically available in pleadings alone. Further, the complaint in *Sonner* "d[id] not allege that Sonner lack[ed] an adequate legal remedy." *Id*. at 844.

Because of *Sonner*'s advanced posture, some courts decline to read it as requiring specific facts at the pleadings stage. *In re JUUL Labs, Inc., Mktg., Sales Pracs., & Prod. Liab. Litig.*, 497 F. Supp. 3d 552, 638 (N.D. Cal. 2020) ("[t]he *facts* of *Sonner*—where the plaintiff on the eve of trial sought to secure a bench trial under the UCL by foregoing CLRA damages claims that had to be tried to a jury—are inapposite considering the allegations and the posture of" a complaint this early in the case); *see also Johnson v. Trumpet Behav. Health, LLC*, No. 3:21-CV-03221-WHO, 2022 WL 74163, at *2 (N.D. Cal. Jan. 7, 2022) (declining to require specific factual pleadings under *Sonner* and citing cases). Most district courts applying *Sonner* in the Ninth Circuit have "understood it to require that a plaintiff must, at a minimum, plead that she lacks adequate remedies at law if she seeks equitable relief." *Guthrie v. Transamerica Life Ins. Co.*, 561 F. Supp. 3d 869, 875 (N.D. Cal. 2021) (citing cases).

On its face, Allen's complaint pleads that "Plaintiff, the general public, and the members of the class and sub-class have no plain, speedy, and adequate remedy at law" as to the claim for UCL violations. (Doc. 1 at ¶ 85.) The complaint also states that Allen and other class members are entitled to restitution for money obtained by Protective illegally, including "un-refunded premiums, withheld benefits, and diminution of value of policies." (Doc. 1 at ¶¶ 81–83.) Allen's opposition to the pending motion further explains that damages for breach of contract (or her other causes of action)[4] would not compensate her or the class for insurance premiums paid to Protective before the alleged breach(es). (Doc. 70 at 15–21.); *cf. Anderson v. Apple*, 500 F.Supp.3d 993, 1003 (N.D. Cal. 2020) (dismissing UCL claim for restitution where plaintiffs failed to plead that they lacked an adequate remedy at law and did not "attempt to argue . . . that the equitable restitution would go beyond the damages available to them.") The Court finds

---

[4] Allen seeks actual damages and punitive damages for Protective's conduct to the extent that it constituted elder financial abuse (Count V), (Doc. 1 at ¶¶ 88–96); punitive damages for Protective's alleged bad faith violation of the implied covenant of good faith and fair dealing (Count VI), (Doc. 1 at ¶107); and damages for breach of conduct (Count III), (Doc. 1 at ¶¶ 73–74).

Allen's showing sufficient to survive Protective's motion for judgment on the pleadings.

Protective next argues that Allen cannot qualify for relief under the restitution prong of the UCL because Protective did not receive premiums through any purportedly unfair business practice. Instead, according to Protective, premiums were paid to obtain life insurance coverage that Allen in fact received *before* any alleged impropriety occurred in terminating Mr. Allen's policy. (Doc. 68-1 at 16.) Protective's argument is overly restrictive. *See Bumpus*, 2022 WL 4366979, at *5 (E.D. Cal. Sept. 21, 2022) (rejecting a similar argument in another insurance dispute regarding the Statutes). As Allen emphasizes in her opposition, the UCL is a broad remedial statute with its restitution mandate allowing the return of "any" money that "may" have been acquired by means of unfair competition. Cal. Bus. & Prof Code, § 17203; (Doc. 70 at 17.) Allen alleges that Protective "wrongfully collected' premiums and withheld benefits, (Doc. 1 at ¶ 81), and that she and members of the putative class lost money as a result of Protective's practices due to such withheld benefits, un-refunded premiums, and diminution in value of policies. (*Id*. at ¶ 82.)

At least as to Allen's claims regarding unrefunded premiums, restitution permits a plaintiff to demand return of monies thereby obtained through such practices. Taking the allegations in the complaint as true that Protective wrongfully denied full coverage on the Policy, Protective may have "obtained [policy premiums] to which it was not entitled and [plaintiffs may] have given up something which he or she was entitled to keep." *Eastman v. Allstate Ins. Co.*, No. 14CV0703-WQH-NLS, 2014 WL 5355036, at *5 (S.D. Cal. Oct. 20, 2014) (citing *Day v. AT & T Corp.*, 63 Cal.App.4th 325, 340 (1998).) Other courts have agreed that premiums paid to defendant insurance companies in similar scenarios raise the possibility of restitution as proper relief. In *Artiste v. Am. Intl. Group, Inc*., for example, plaintiff alleged "the existence of an insurance contract, which necessarily implies the payment of insurance premiums, and also the existence of 'monies given to the defendant." 2:19-CV-07574-SVW-E, 2020 WL 4037219, at *5 (C.D. Cal. Jan. 23, 2020). From this, at the preliminary pleadings stage, the court was "persuaded . . . that [p]laintiff has adequately alleged the possibility of restitution and may plausibly demonstrate that a form of restitution based on insurance premiums paid to the [d]efendants may

12

be appropriate". *Id*.; *see also Tavakolian v. Great Am. Life Ins. Co.*, No. EDCV201133JGBSHKX, 2022 WL 1200043, at *2 (C.D. Cal. Apr. 7, 2022) (holding that plaintiff sufficiently pled a claim for restitution at the motion to dismiss stage where "he paid for a life insurance policy that would conform to the legal obligations of the [Statutes]" and his insurance company "allegedly retains [plaintiff's] premiums but he no longer has the same policy he paid for.")

As such, Allen's UCL claim survives Protective's motion as to the availability of restitution as a potential remedy for, at a minimum, her un-refunded premiums. Though the parties offered little assistance to the Court on this issue, it also appears that restitution for a diminished policy value also may be an available remedy for insured policyholders in the class who are still alive. *See Siino v. Foresters Life Ins. & Annuity Co.*, 340 F.R.D. 157, 166 (N.D. Cal. 2022) ("For policyholders who are still alive, the likeliest restitution remedy would be for diminution of the value of their policies"). However, Protective is correct that Allen cannot recover unpaid benefits via restitution: courts have expressly found that the payment of policy benefits are "damages" and therefore not recoverable under the UCL. *See Bentley I,* 2016 WL 7443189, at *6 (C.D. Cal. June 22, 2016) (collecting cases and dismissing plaintiff's UCL claim for restitution based on an alleged violation of Statutes at issue because the claim was based upon withheld policy benefits and was encompassed by breach of contract claim seeking proceeds under the policy). Protective's motion is therefore **GRANTED** without leave to amend insofar as Allen seeks restitution for withheld policy benefits and **DENIED** on all other grounds.

**III.     Bad-Faith Violation of the Implied Covenant of Good Faith and Fair Dealing, Count VI**

In California, "[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." *Foley v. Interactive Data Corp.,* 47 Cal.3d 654, 683 (1988). "Under California law, 'insurance bad faith' refers to a breach of the implied covenant of good faith and fair dealing as that covenant applies to insurance policies." *Gentry v. State Farm Mut. Auto. Ins. Co.*, 726 F. Supp. 2d 1160, 1166 (E.D. Cal. 2010). "In order to establish a breach of the implied covenant of good faith and fair dealing under California law, a

plaintiff must show that: (1) benefits due under the policy were withheld; and (2) the reason for withholding benefits was unreasonable or without proper cause." *Guebara v. Allstate Ins. Co.*, 237 F.3d 987, 992 (9th Cir. 2001). "The key to a bad faith claim is whether or not the insurer's denial of coverage was reasonable." *Id*. "Although a claim for breach of the implied covenant of good faith and fair dealing generally sounds in contract, in the insurance context, such a claim also sounds in tort." *Gentry*, 726 F. Supp. 2d at 1166 (citing *Jonathan Neil & Assoc. v. Jones,* 33 Cal.4th 917, 932 (2004)).

Protective asserts that Allen's claim for bad-faith violation of the implied covenant of good faith and fair dealing ("bad-faith claim") does not survive scrutiny because (1) Allen did not allege that Protective denied a claim for benefits and (2) any decision Protective may have made to deny coverage was based on a genuine dispute as to the Statutes' application. (Doc. 68-1 at 23.) Allen counters that she is not required to allege a denied claim and that dismissal at this stage is improper, particularly where there is a factual dispute. (Doc. 70 at 24–26.)

Protective's motion appears to exclusively argue that Allen cannot bring a claim for bad faith *in tort*. (*See* Doc. 68-1 at 23–26.) However, the Court notes that neither the complaint nor Allen's opposition specifies that her bad faith claim sound exclusively in tort as opposed to in contract. It is plausible, based on Allen's repeated claims that Protective breached the Policy, that breach of contract may form the basis for all or part of Allen's bad faith claims. *Nieves v. United of Omaha Life Ins. Co.*, No. 3:21-CV-01415-H-KSC, 2022 WL 432726, at *6 (S.D. Cal. Feb. 11, 2022) (rejecting defendant insurer's claim that the statute of limitations for tort-based bad faith claims governed because plaintiff "repeatedly alleged" that the insurer breached her policy.")

Furthermore, as presented to the Court regarding tort claims, Protective's argument assumes that the only valid (tort) claims for "benefits . . . withheld" are those in which plaintiffs make—and insurance companies deny—a claim for benefits. Protective's brief explains that "alleged termination of the Policy in violation of the Statutes can only support a claim for breach of contract, not a bad-faith tort claim" because policy cancellation does not "give rise to [the] conflict of interest" that normally justifies extending bad-faith tort claims to insurance claim denials. (Doc. 70 at 24.) This is because, according to Protective, "the insurer's and insured's

interest are financially at odds" when the plaintiff makes a claim—insofar as fulfillment of that claim would require payment by the insurance company—but *not* inherently at odds when the insurance company terminates a life insurance policy.

Protective offers no supportive authority directly on point. Instead, it asks the Court to extend California Supreme Court precedent from the employment law context. (Doc. 68-1 at 24–25) (citing *Foley v. Interactive Data Corp.*, 765 P.2d 373, 394 (Cal. 1988).) *Foley* declined to "extend the tort of bad faith to employment contracts" because employers generally have an economic incentive to "retain good employees". *Foley*, 765 P.2d at 396. Protective leverages *Foley* to conclude that Allen must plead facts explaining how policy cancellation in this case "give[s] rise to a conflict of interest" to "justify bad-faith tort liability" at the pleadings stage. (Doc. 68-1 at 21.) Under Protective's own proposed standard—which the Court does not necessarily adopt—Protective's argument fails.

Protective's own citation to *Helfand v. Nat'l Un. Fire Ins. Co. of Pittsburgh* undermines its argument. There, the California Court of Appeal concluded that an insurer's cancellation of a policy "in anticipation of an imminent claim" rendered the insurer liable in tort. (Doc. 68-1 at 25, citing 13 Cal. Rptr. 2d 295, 316–17 (Cal. Ct. App. 1992).) Despite Protective's brazen assertion that "Plaintiff alleges no facts to suggest that Protective cancelled her policy in anticipation of an impending claim" (Doc. 68-1 at 25), Allen has very clearly pled facts alleging that Protective did just that. Specifically, Allen alleges that Protective cancelled her husband's life insurance policy and many other policies of similarly situated insureds *specifically* because the insureds failed to make payments at a time when they were *too ill to do so*. Protective did so, according to the Complaint, after Protective failed to notify the insureds of their right to have a third party receive notice of pending policy lapse. The complaint states on its face: "Plaintiff is informed and believes that Defendants made a conscious decision to withhold and conceal from policyowners, insureds, beneficiaries as well as their agents and personnel the actual and/or potential application" of the Statutes in an effort to "conceal[] the rights of insureds" resulting in unintentional policy lapses that prevented policyholders from receiving benefits when insureds passed away shortly after the lapse. (Doc. 1 at ¶¶ 103–106.) To conclude that these facts do not

15

plausibly establish the possibility of a conflict of interest between Protective and the insureds, including Allen and other class members, would stretch credulity.

As a last resort, Protective argues that it could not have acted in bad faith in denying coverage on Allen's policy because there was a "genuine dispute" at the time as to whether the statutes applied to Allen's pre-2013 policy. (Doc. 68-1 at 28.) Under the genuine dispute doctrine, an insurer who denies payment of policy benefits due to the existence of a genuine dispute with its insured as to coverage liability "is not liable in bad faith even though it might be liable for breach of contract." *Bosetti v. U.S. Life Ins. Co. in City of New York*, 175 Cal. App. 4th 1208, 1237 (2009). As authority cited by Protective points out, however, "it is somewhat anomalous to consider the genuine dispute doctrine" in a motion for judgment on the pleadings, "as [the doctrine] is generally applied at summary judgment." *Ovitz v. Chartis Prop. Cas. Co.*, No. CV 15-3916 PSG (PLAx), 2015 WL 12746209, at *3 (C.D. Cal. Sept. 14, 2015). More importantly, Protective offers no argument of a "genuine dispute" after *McHugh* resolved the question of the Statutes' applicability to pre-2013 policies. And Allen clearly alleges that Protective continues to skirt the Statutes' required protections nearly 18 months after the purported "genuine dispute" was resolved. (Doc. 1 at ¶ 83; *see also* Doc. 1 at ¶¶ 79, 108.) On these facts, the Court declines to make a definitive finding regarding the applicability of the genuine dispute doctrine to Allen's claims. Protective's motion is **DENIED** in its entirety as to Allen's Count VI bad-faith claim.

**ORDER**

For the reasons stated above, the Court **ORDERS**:

1. Protective's motion for judgment on the pleadings (Doc. 68-1) **GRANTED IN PART AND DENIED IN PART AS FOLLOWS**:
    a. Protective's motion is **DENIED** as to Plaintiff's requests for declaratory relief, Counts I & II of the complaint, (Doc. 1).
    b. Protective's motion is **GRANTED** as to Plaintiff's request for an injunction under the UCL, Count IV of the complaint. Plaintiff is **GRANTED leave to amend** this claim as necessary and appropriate.

16

   c. Protective's motion is **GRANTED** as to Plaintiff's request for restitution under the UCL, **without leave to amend**, to the extent that Plaintiff seeks restitution for withheld policy benefits.  Protective's motion regarding Plaintiff's UCL claim, Count IV of the complaint, is **DENIED** as to all other grounds.

   d. Protective's motion is **DENIED** as to Plaintiff's claim for Bad-Faith Violation of the Implied Covenant of Good Faith and Fair Dealing, count VI of the complaint.

 2. Plaintiff **MAY AMEND** the complaint in compliance with this Order within **30 days** of the date of this Order.

IT IS SO ORDERED.

Dated: **March 22, 2023**

UNITED STATES DISTRICT JUDGE